IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 08-28743 |
| Nancy Jean Serwin, | ) | Judge Bruce W. Black |
| | ) | Chapter 11 |
| debtor/debtor-in-possession. | ) | |

# DEBTOR'S PLAN OF REORGANIZATION

**DEBTOR'S COUNSEL**:
SCOTT R. CLAR, ESQ.
(Atty. No. 06183741)
CRANE, HEYMAN, SIMON, WELCH & CLAR
135 S. LaSalle St., Suite 3705
Chicago, IL 60603
(312) 641-6777
\mjo2\Serwin\Discl Stmt.wpd

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 08-28743 |
| Nancy Jean Serwin, | ) | Judge Bruce W. Black |
| | ) | Chapter 11 |
| debtor/debtor-in-possession. | ) | |

## DEBTOR'S PLAN OF REORGANIZATION

NANCY JEAN SERWIN, debtor and debtor-in-possession herein ("Debtor"), by and through her attorneys, proposes her Plan of Reorganization ("Plan") in accordance with Section 1121(a) of the Bankruptcy Code.

## INTRODUCTION

On October 24, 2008, the Debtor filed her Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code (the "Petition Date"). Since the Petition Date, the Debtor has managed her financial affairs as a debtor-in-possession pursuant to Section 1101 and 1107 of the Bankruptcy Code. No trustee, examiner or Official Committee of Unsecured Creditors has been appointed in the Debtor's Chapter 11 case.

The Debtor is the proponent of this Plan. The Plan contemplates distribution to the holders of Allowed Claims, as that term is defined in the Disclosure Statement filed contemporaneously with the Plan, from the sale of real properties located in Akumal, Riviera Maya, Mexico, consisting of a 6,000 square foot residence, and adjoining lot (the "Mexican Properties"). For a further discussion of the mechanics of the Plan, the reader's attention is directed to the Disclosure Statement filed by the Debtors in connection with their Plan. All holders of Allowed Claims and Interests are encouraged to read the Disclosure Statement and the Plan carefully before voting on the Plan.

**Summary of the Plan:** The Plan calls for distributions to the Debtor's various classes of creditors as follows:

1. Costs of administration to be paid in full at time of confirmation unless otherwise agreed to;

2. Priority Claims: to be paid in full in cash on or within sixty (60) days of the Effective Date;

3. Associated Bank ("Bank"): mortgage attaching to property located at 2556 N. Terrace Avenue, Milwaukee, Wisconsin 53211 (the "Prime Residence"). Associated will continue to be paid monthly pursuant to the terms of the mortgage and note executed pre-petition by the Debtor;

4. Unsecured Non-Priority Claims: unsecured non-priority claims will be paid 100% of their allowed claims, upon the sale of the Mexican Properties.[1]

## ARTICLE I

## DEFINITIONS

The following terms, when used herein, shall have the meaning specified below, unless the context otherwise requires:

**1.1 Administrative Expense:** A cost or expense of administration of this Chapter 11 case, including any actual, necessary expense of preserving or liquidating the estate, or of operating the business of the Debtor and all allowances approved by the Bankruptcy Court in accordance with Section 503 of the Bankruptcy Code.

**1.2 Allowed Claim:** A "Claim" (as defined below) (I) proof of which has been filed with the Bankruptcy Court within the time fixed by the Bankruptcy Court or applicable rules or statutes, and with respect to which no objection has been timely filed by any party in interest, or (ii) that has been, or hereafter is, listed by the Debtor as liquidated in amount

[1] The Debtor plans to at least object to the claim of Don W. Barnes in the amount of $250,000 ("Barnes"), as Barnes provided the Debtor with investment advice in her role as Trustee of the Carol Igini Trust, and the Debtor believes she possesses a claim against Barnes for his perceived negligence in advising her on the trust and other financial matters.

and not disputed or contingent, or (iii) that has been allowed by a "Final Order" (as defined below) by the Bankruptcy Court, or (iv) that is allowed by the provisions of this Plan.

**1.3** **Associated Bank**: Associated Bank ("Associated") is the entity holding the first mortgage on property located at 2556 N. Terrace Avenue, Milwaukee, Wisconsin 53211.

**1.4** **Bankruptcy Code:** Title 11 of the United States Code, Section 101 et seq., as amended.

**1.5** **Bankruptcy Court:** The United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

**1.6** **Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure.

**1.7** **Carol Igini**: Carol Igini, the Debtor's long term friend with whom she constructed and maintained several philanthropic endeavors.

**1.8** **Carol Igini Trust**: The trust set up by Carol Igini before her death, for the benefit of the Debtor and Robert Anderson, Jr., Nancy Borkowicz and Michael Joseph, for which the Debtor is the Trustee.

**1.9** **Cash:** The term "Cash" means legal tender of the United States of America, which may be conveyed by check or wire transfer.

**1.10** **Chapter 11:** Chapter 11 of the Bankruptcy Code.

**1.11** **Claim:** The term "Claim" shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

**1.12** **Class:** "Class" means a category of holders of Claims or Interests as set forth in Article II of the Plan.

**1.13** **Confirmation:** The entry by the Bankruptcy Court of a Final Order confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**1.14** **Debtor:** Nancy Jean Serwin.

**1.15 Debtor's Estate:** All of the Debtor's "property of the estate" as defined in Section 541 of the Bankruptcy Code.

**1.16 Debtor in Possession:** Nancy Jean Serwin

**1.17 Disclosure Statement:** The Disclosure Statement that relates to this Plan and which is approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code, inclusive of any amendments or modifications thereto.

**1.18 Effective Date:** Thirty (30) days following the date on which the Order confirming this Plan becomes a Final Order.

**1.19 Final Order:** (I) an order or a judgment that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek reargument, reconsideration or rehearing has expired and has not been extended and as to which no appeal, petition for certiorari, reargument, reconsideration or rehearing is pending, or (ii) an order or a judgment for which an appeal, reargument, reconsideration, rehearing or certiorari has been sought, and as to which the order or judgment has been affirmed or the request for reargument, reconsideration, rehearing or certiorari has been denied, and the time to take any further appeal, reargument, reconsideration, rehearing or certiorari has expired, so that in the event of either (I) or (ii), such order or judgment shall have become final and non-appealable in accordance with applicable law.

**1.20 Interest:** Any equity interest held by any shareholder of the Debtor.

**1.21 Lien:** The term "Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

**1.22 Mexican Properties:** The vacation home and lot in Akumal, Riviera Maya, Mexico.

**1.23 The Other Trust Beneficiaries**: Michael Joseph, Nancy Borkowicz and Robert Anderson, Jr.

**1.24** **Month:** A calendar month, including the month in which a date or event occurs.

**1.25** **Other Priority Claims:** Any Claim that is entitled to priority under Section 507(a) of the Bankruptcy Code, other than Administrative Claims or Tax Claims.

**1.26** **Plan:** This Plan of Reorganization including any amendments or modifications thereto.

**1.27** **Primary Residence:** The Debtors' residence located at 2556 N. Terrace Avenue, Milwaukee, Wisconsin.

**1.28** **Pro-rata:** With respect to any distribution on account of any claim or matter, in the same proportion as the amount of such claim or matter bears to the aggregate amount of all claims or matters of its class.

**1.29** **Secured Claim:** The portion of any Claim, determined in accordance with Section 506(a) of the Bankruptcy Code, as of the date of Confirmation, which is (a) secured by a valid, perfected and unavoidable lien on property, arising by contract, operation of law, or otherwise to the extent of the value of the creditor's interest in the Debtor's interest in such property or (b) subject to offset.

**1.30** **Security Interest:** The term "Security Interest" shall have the meaning set forth in Section 101(51) of the Bankruptcy Code.

**1.31** **Tax Claim:** Any Claim of a governmental unit of the kind specified in Sections 502(I) and 570(a)(8) of the Bankruptcy Code.

**1.32** **Unsecured Claim:** Any Claim that is not an Administrative Claim, Tax Claim, Other Priority Claim or Secured Claim.

Unless otherwise defined, the words and phrases used herein shall have the meanings ascribed in the Bankruptcy Code and in the Bankruptcy Rules.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

The following is a designation of the Classes of Claims and Interests established under the Plan. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and shall be deemed classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of such different Class. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Tax Claims have not been classified.

### A) UNCLASSIFIED CLAIMS

**2.1 Administrative Claims:** Administrative Claims shall consist of Allowed Claims for Administrative Expenses. The Debtor's only anticipated Administrative Claim, other than those debts which she may incur in the ordinary course of her daily affairs, would be to the law firm of Crane, Heyman, Simon, Welch & Clar, employed as counsel for the Debtor.

**2.2 Tax Claims:** The Allowed Claims, if any, of the Internal Revenue Service ("IRS"), the Illinois Department of Revenue ("IDR") and any other federal, state or local taxing authority which are entitled to priority under Sections 502(l) and 507(a)(8) of the Bankruptcy Code.[2]

### B) CLASSIFIED CLAIMS AND INTERESTS

**2.3 Class 1:** The Allowed Claim of Associated Bank arising from the mortgage attaching to the primary residence in the approximate amount of $200,000.00.

**2.4 Class 2:** The Allowed Claims of General Unsecured Creditors, including the claims of the Other Trust Beneficiaries, totaling $900,000.00 and all other unsecured

[2] The Debtor is unaware of any tax claims.

creditors, totaling $1,457,409.85, possibly to be reduced by the disallowance of the $250,000.00 claim of Don Barnes.

## ARTICLE III

## TREATMENT OF UNCLASSIFIED CLAIMS AND CLAIMS AND INTERESTS NOT IMPAIRED UNDER THE PLAN

Under the terms of the Plan, Administrative Claims and the claim of Associated shall not be impaired. The following sets forth the treatment of such Claims under the Plan.

**3.1 Administrative Claims:** Except as provided herein, holders of Allowed Administrative Claims shall be paid in cash in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code as follows, unless the holder of an Administrative Claim agrees to a different treatment:

> Each holder of an Administrative Claim of the kinds specified in Section 507(a)(1) of the Bankruptcy Code will receive on account of such Claim, cash equal to the allowed amount of such Claim, within thirty (30) days of the Effective Date, except that post-petition trade creditors of the Debtors will be paid according to the terms under which the debt was incurred; provided, however, that all Administrative Claims with respect to the payment of any professional persons shall remain subject to and be paid in accordance with any Final Order of the Bankruptcy Court.

**3.2 Tax Claims:** Holders of Allowed Tax Claims shall be paid in cash in accordance with Section 1129(a)(9)c) of the Bankruptcy Code as follows, unless the holder of a Tax Claim agrees to a different treatment:

**3.3 Class 1 Claim of Associated**: Associated shall continue to be paid its monthly mortgage payment pursuant to the terms of the note and mortgage entered into by the Debtor prior to the Petition Date. The Debtor has remained current in her payments to Associated at all times.

## ARTICLE IV

## TREATMENT OF CLAIMS
## IMPAIRED UNDER THE PLAN

Under the terms of the Plan, Allowed Claims in Class 2 shall be impaired. The following sets forth the treatment of such Claims under the Plan:

**4.1** **Class 2 Claims**: Class 2 Claims of general unsecured creditors: each holder of an Allowed Class 2 Claim shall receive 100% of the Allowed Amount of such Claim and in complete satisfaction of such claim. The aforementioned sum shall be paid upon and out of the proceeds of the sale of the Mexican Properties.

## ARTICLE V

## IMPLEMENTATION OF PLAN

**5.1** Upon Confirmation, the Debtor shall be revested her assets, subject only to the terms and conditions of this Plan. The Debtor shall be entitled to continue to operate and manage her business and financial affairs in the ordinary course without further Order of this Court, except as hereinafter set forth.

**5.2** Upon Confirmation, an injunction under Section 524 of the Bankruptcy Code shall arise to prevent any party from foreclosing its Lien or Security Interest in any assets of the Debtor or otherwise enforcing Claims against the Debtor and its assets except in a manner provided for under the terms and conditions of this Plan. This injunction shall remain in effect to prevent said actions until all distributions have been made in accordance with the terms and conditions of the Plan.

**5.3** After Confirmation of the Plan, the Debtor will continue to manage her financial affairs and pursue the sale of the Mexican Properties through the real estate broker employed in Mexico, Malù Gûijosa, for one (1) year. Payment to creditors pursuant to the Plan will be made from funds realized from the sale of the Mexico Properties. In the event the Debtor cannot sell or does not possess a contract to sell the Mexican Properties

at the end of the one (1) year period, the Debtor will agree to place the Mexican Properties in a liquidating trust with the Trustee to be mutually agreed upon between the Debtor and the Other Trust Beneficiaries. The Debtor and the Other Trust Beneficiaries shall each have an equal vote with respect to matters concerning the sale and marketing of the Mexican Properties after the expiration of the one (1) year period.

**5.4** The Debtor will have the right to make any distribution to creditors earlier than required by the Plan, without penalty, according to the priorities set forth herein and under the Bankruptcy Code.

**5.5** The Debtor shall be the disbursing agents charged with making the payments required under the Plan.

**5.6** The Plan is self-executing. The Debtor shall not be required to execute any newly created documents to evidence the Claims, Liens or terms of repayment to the holder of any Allowed Claim. The terms of this Plan will exclusively govern payments to creditors and any other rights of creditors as against the Debtor and its property. Furthermore, upon the completion of the payments required under this Plan to the holders of Allowed Claims, such Claims, and any Liens and Security Interests that may support such Claims, shall be deemed released and discharged.

**5.7** The Debtor shall have the right, power and authority after Confirmation to commence any preference, fraudulent conveyance or other litigation it deems appropriate. The Bankruptcy Court shall retain jurisdiction for such litigation.

## ARTICLE VI

## EXECUTORY CONTRACTS

**6.1** Unless otherwise expressly provided in this Plan, all executory contracts and unexpired leases which exist between the Debtor and any other party, whether such executory contract be in writing or oral, which has not been previously assumed, assigned,

rejected or otherwise terminated by the Debtor shall be deemed assumed upon Confirmation of this Plan pursuant to Sections 365 and 1123(b)(2) of the Bankruptcy Code.

**6.2** Any and all Claims asserted by any party arising from the rejection of executory contracts and unexpired leases pursuant to this Plan must be filed on or within thirty (30) days following Confirmation of the Plan.[3] Further, with respect to Claims for default relating to any unexpired lease or executory contract that is deemed assumed pursuant to the Plan, any and all such Claims must also be filed on or within thirty (30) days following the assumption. Allowed Claims emanating from the rejection of unexpired leases and executory contracts will be treated as Class 7 Claims. Allowed Claims for default emanating from the assumption of unexpired leases and executory contracts will be treated as Class 7 Claims. Any person failing to file such a Claim within the time provided herein shall be forever barred from asserting such Claim and shall not receive any distribution under this Plan.

**6.3** The provisions set forth herein shall be equally applicable to executory contracts and unexpired leases of real and personal property.

## ARTICLE VII

## BANKRUPTCY COURT'S RETENTION OF JURISDICTION

**7.1** The Bankruptcy Court shall retain jurisdiction after Confirmation to: (I) consider applications for fees and allowances for professional persons; (ii) supervise the implementation of this Plan; (iii) consider objections to Claims against the Debtors and Debtors' Estate; (iv) consider applications for the assumption, assignment and/or rejection of executory contracts; (v) hear and conclude all adversary proceedings or contested matters; (vi) resolve disputes regarding interpretation of this Plan; (vii) allow Administrative Claims; (viii) enter Orders to further consummation of the Plan; (ix) approve modification

---

[3] The Debtor is unaware of any possible claims arising from the rejection of executory contracts or unexpired leases.

of the Plan upon motions brought before the Bankruptcy Court in accordance with Section 1127 of the Bankruptcy Code; (x) consider all applications and matters pending before the Bankruptcy Court on the date of Confirmation; (xi) enter any order, including injunctions, necessary to enforce title, rights and powers of the Debtor, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Bankruptcy Court may deem necessary; (xii) enforce terms of Plan; (xiii) hear and conclude all matters brought by the Debtor under Article V, Section 5.7; and *(xiv)* enter an Order concluding and terminating this Chapter 11 case.

## ARTICLE VIII

## INVALIDATION OF LIENS AND DISCHARGE

**8.1** The provisions of the confirmed Plan shall bind all creditors and other parties in interest, whether or not such persons accept the Plan. The distributions provided under the Plan shall be in exchange for and in complete satisfaction and release of all Liens, Security Interests and Claims against the Debtor and any of the assets or properties of Debtor's Estate. Unless otherwise specifically provided to the contrary herein or in the Confirmation Order, on and after Confirmation, all holders of Claims shall be precluded from asserting any Lien, Security Interest or Claim against the Debtor.

## ARTICLE IX

## INTEREST AND PENALTIES

**9.1** Except as otherwise provided herein, or required by the Bankruptcy Code, no interest or penalties accruing on or after September 12, 2005, shall be paid on any Allowed Claim nor shall any creditor claiming any such interest or penalty be entitled to have its Claim for interest or penalty allowed for payment pursuant to the Plan.

## ARTICLE X

## CONFIRMATION OF PLAN UNDER SECTION 1129(b) OF THE BANKRUPTCY CODE

**10.1** The Debtor reserves the right, pursuant to Section 1129(b) of the Bankruptcy Code, to request the Bankruptcy Court to confirm the Plan if all applicable requirements of Section 1129(a) of the Bankruptcy Code, other than Section 1129(a)(8), are met.

## ARTICLE XI

## UNCLAIMED PROPERTY

**11.1** In the event that any distribution made to a claimant by the Debtor under this Plan remains unclaimed thirty (30) days after such distribution is made, this distribution shall become property of the Debtor and shall not be recouped by any claimant in subsequent distributions. Once the distribution is recouped by the Debtor, the claimant shall forfeit any and all legal and equitable right to such distribution and the proceeds thereof.

## ARTICLE XII

## CLAIMS OBJECTIONS

**12.1** The Debtor plans to file objections to the allowance of certain Claims, and the Bankruptcy Court retains jurisdiction to rule on these objections.

## ARTICLE XIII

## DISPUTED CLAIMS

**13.1** No distribution shall be made to the holders of disputed Claims until the dispute is resolved either by agreement or by Order of the Bankruptcy Court. Distributions to the holders of Allowed Claims shall not be held back pending resolution of disputed Claims. However, in the event a distribution is made to the holders of Allowed Claims before all disputed Claims have been resolved, sufficient funds shall be held back to pay

the pro rata share due the holders of disputed Claims in the event the dispute is resolved against the Debtors.

## ARTICLE XIV

## RETENTION OF CAUSES OF ACTION

**14.1** The Debtor shall retain any and all claims and causes of action it has against third parties, including but not limited to any claims against Don Barnes. Such claims and causes of action shall survive and be unaffected by Confirmation of this Plan. Any funds realized from such retained claims and causes of action shall be property of the Debtor and may be used to make the payments to the holders of Allowed Claims pursuant to the Plan.

## ARTICLE XV

## GENERAL PROVISIONS

**15.1** **Rules of Construction.** Unless otherwise specified herein or the context clearly indicates otherwise, the rules of construction applicable to the Bankruptcy Code and the Bankruptcy Rules are applicable to this Plan.

**15.2** **Definitions.** A term used in the Plan that is not defined in the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

**15.3** **Amendment and Modification.** The Debtor may alter, amend or modify the Plan before or after Confirmation in accordance with the applicable provisions of the Bankruptcy Code.

**15.4** **Severability.** Should any provision of this Plan be determined to be unenforceable, such determination shall not impair, limit or otherwise affect the enforceability of any other provision of this Plan.

**15.5** **Successors and Assigns.** The rights and obligations of any person or entity referred to in this Plan shall be binding upon, and shall inure to the benefit of the successors and assigns of any such person or entity.

**15.6** **Headings.** The headings of the Articles, Paragraphs and Sections of this Plan are inserted for convenience only and shall not affect the interpretation therein.

**15.7** **Effect of Appeals.** Unless the Confirmation Order is stayed pending appeal, the Debtor may consummate this Plan notwithstanding the pendency of an appeal from the Confirmation Order, or the timely service of the filing of a Motion under Bankruptcy Rules 7052, 8002(b), 8002(c), 8003, 8015, 9023 or 9024.

**15.8** **Computation of Time**. Unless expressly provided otherwise in this Plan, in computing any period of time prescribed or allowed by this Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

**15.9** **Insurance Preservation**. Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any policies of insurance that may cover any claims against the Debtor or any other person.

**15.10** **Terms Binding**. On the Effective Date, all provisions of the Plan, including all agreements, instruments and other documents filed in accordance with the Plan and executed by the Debtor in connection with the Plan, shall be binding upon the Debtor, all creditors and shareholders and all other entities that are affected in any manner by the Plan. All agreements, instruments and other documents filed in connection with Plan shall have full force and effect, and shall bind all parties thereto as of Confirmation.

**15.11** **Inconsistencies**. In the event that there is any inconsistency between the Plan and Disclosure Statement, any exhibit to the Plan or other instrument or document created or executed pursuant to the Plan, the Disclosure Statement shall govern.

**15.12** **Compliance With Applicable Law**. It is intended that the provisions of the Plan (including the implementation thereof) shall be in compliance with all applicable laws and any rules and regulations promulgated thereunder. If the Debtor concludes that the Plan may not comply with applicable law, then in such event the Debtor intend to amend

the Plan in such respects as she deems necessary to bring the Plan into compliance therewith.

Respectfully submitted,

NANCY JEAN SERWIN,

debtor and debtor-in-possession

By: /s/Scott R. Clar
One of her attorneys

**DEBTOR'S COUNSEL**:
SCOTT R. CLAR, ESQ.
(Atty. No. 06183741)
CRANE, HEYMAN, SIMON, WELCH & CLAR
135 S. LaSalle St., Suite 3705
Chicago, IL 60603
(312) 641-6777
\mjo2\Serwin\Plan.wpd